IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF WALTER S. BANDURSKI, ) | |
| ) | |
| ) | C.A. No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| COMMISSIONER OF THE ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

The estate of Walter S. Bandurski ("Plaintiff" or the "Estate"), by and through its counsel, Prickett, Jones & Elliott, files this complaint ("Complaint") against the Internal Revenue Service (the "Defendant" or the "IRS") for the refund of federal estate taxes ("Estate Taxes") and in support thereof alleges as follows:

1. The Estate overpaid federal and state estate taxes and now seeks a refund of the overpayment plus all related amounts.

2. The IRS insisted that the Estate pay Estate Taxes on income received by the Estate many months after Walter S. Bandurski ("Mr. Bandurski" or the "Decedent") died because the IRS insisted that as of his date of death ("DOD") Mr. Bandurski should have known that a company in which he had owned stock that was disposed of more than a year prior to his death, Walter S. Bandurski, Inc. ("WBI"), would have a former stockholder pursue a claim in a class action law suit that would settle on terms that would provide cash payments to certain stockholders of the class members owning stock at the time the cause of action arose.

3. The IRS position does not reflect what a willing buyer would have paid to a willing seller as of the DOD. As of his DOD, Mr. Bandurski did not know about the class action and had no reasonable basis to suspect that WBI had any potential claims that it could have asserted. Further, as of the DOD, there was no reasonable basis to predict the value of this unknown claim. As of the DOD, the claim was unknown, contingent and unliquidated claim (the "Unknown Claim").

4. The Unknown Claim was the chance that (i) a company in which Mr. Bandurski had once owned common stock and was liquidated *before* Mr. Bandurski's death would be included in a class action lawsuit *after* the Decedent's death; (ii) that the class action lawsuit would result in monetary settlement to certain qualifying class members fifteen (15) months after Mr. Bandurski's DOD; (iii) that the liquidated company in which Mr. Bandurski had owned stock would have the documents necessary for it to qualify for a monetary settlement; and (iv) that Mr. Bandurski's interest in the liquidated company as a former stockholder would result in a cash payment of $363,600 (the "Unknown Claim Proceeds") to the Estate fifteen (15) months after Mr. Bandurski's death.

5. The Estate asserts that the price a willing buyer would have been willing to pay to a willing seller for the Unknown Claim was less than $1.00 as of the DOD.

6. The IRS asserts that the Unknown Claim was worth $318,773.00 ($363,600.00 on the date paid to the Estate discounted to reflect the time elapsed from the DOD to the date of payment) and imposed Estate Taxes based on that value (the "IRS Value").

7. The IRS Value of the Unknown Claim is grossly overstated. At a minimum, the Estate is entitled to a full refund of all Estate Taxes paid accrued with respect to the Unknown

Claim based on the IRS Value, plus credit for the expense of this litigation, plus interest since the date the Estate Taxes were paid.

## BASIS FOR JURISDICTION

8. Plaintiff is the Estate of the Decedent. The Decedent was a long-time resident of the state of Delaware and died in Delaware on August 26, 1998.

9. The Estate filed a Form 706 (the "Form 706"), Federal Estate (and Generation-Skipping Transfer) Tax Return, on November 26, 1999. (A copy of the Form 706 is attached as Exhibit 1.) The Form 706 reported federal estate tax liability of $695,233.58 (the "Initial Estate Tax Amount") which was satisfied by the Estate's prior payment of $849,400.00 of estimated federal estate taxes paid when the Estate filed an Application for Extension of Time to File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes, Form 4768, ("Form 4768"), on or about May 20, 1999. (A copy of the Form 4768 is attached as Exhibit 2.)

10. The Estate paid additional Estate Taxes in the amount of $144,454.43 on July 8, 2002 (the "Additional Tax Payment").

11. The Estate filed a Form 843, Claim for Refund and Request for Abatement, on June 30, 2004 (the "Refund Request") requesting a refund of Estate Taxes paid with respect to the IRS Value of the Unknown Claim plus interest, less deductions for related expenses plus interest. (A copy of the Refund Request is attached as Exhibit 3.)

12. The Refund Request was denied by the IRS by letter dated June 23, 2005 (the "Refund Denial"). (A copy of the Refund Denial is attached as Exhibit 4.) This action relates to the Refund Denial.

13. Defendant, the IRS, is an agency of the United States federal government.

14. This Court has original jurisdiction over this action because it is against a federal agency for the recovery of federal estate taxes erroneously or illegally assessed and collected. 28 U.S.C. § 1346(a)(1).

## FACTS

15. Until 1997, the Decedent, together with his ex-wife, Barbara A. Bandurski, and their son, Michael J. Bandurski ("Michael"), owned Walter S. Bandurski, Inc., a Delaware corporation ("WBI"), a trash hauling company operating in the state of Delaware.

16. Until July 31, 1997, the Decedent owned forty percent (40%) of the outstanding shares of common stock of WBI. On July 31, 1997, more than one year before the DOD, WBI transferred substantially all of its assets to another company in a tax-free, stock-for-assets reorganization. In August, WBI distributed the acquirer's stock and the small balance of WBI's other assets to its three (3) stockholders in exchange for their WBI stock, which was cancelled, and WBI permanently ceased all activity.

17. On June 30, 1998, WBI was dissolved under state law.

18. The Decedent died on August 26, 1998, more than one (1) year after the Decedent surrendered all of his common stock in WBI and WBI ceased all business activity.

19. Barbara A. Bandurski died on August 7, 1998, a few weeks before the DOD.

20. The Decedent's Will was submitted for probate. Saul, Ewing, Remick Ewing & Saul was retained to assist with the administration of the Estate and preparation of the required Federal and Delaware Estate Tax Returns.

21. Unbeknownst to any of the stockholders, on May 21, 1998, a lawsuit was filed against the Delaware Solid Waste Management Authority by Sylvester Jenifer, T/A Vernon's Home Improvements, as the plaintiff (the "Action"). The Action was filed as a class action and

alleged that the plaintiff in the Action did not know the identities of the other potential members of the class.

22. The Estate filed the Form 706 on November 26, 1999. At the time that the Form 706 was filed, the Executor had no knowledge of the existence of the Action, that WBI had been named as a class member, or that the Michael J. Bandurski had submitted any documents to class counsel. The IRS did not contact the Estate regarding the Form 706 until September 2000.

23. In March 2000, the Executor of the Estate learned of Michael's actions causing the Company to be added to the plaintiff class in the Class Action when Michael delivered to the Executor a check in the amount of $10,000 characterized by the Class Action plaintiff's counsel in his transmittal letter to Michael as an "incentive award approved by the Court.".

24. In July 2000, the Executor received from Michael a check for $899,663.03 in settlement of WBI's claim in the Action. Because the Decedent had owned 40% of the common stock in WBI, 40% of the total $909,633.03 -- $363,600.00 -- was distributed to the Estate as its share of Unknown Claim Proceeds.

25. The Decedent had no knowledge of a potential cause of action on the DOD and the Estate had no knowledge of the Action until March 2000 when Michael delivered the Class Action counsel's March 17, 2000 letter to the Executor, almost two (2) years after the DOD.

26. The IRS initiated an audit of the Estate's tax return by letter dated September 14, 2000 (the "Examination Letter"). Among other things, the Examination Letter asked "[w]hether any additional deductions or assets have come to your attention since the filing of this return." (A copy of the Examination Letter is attached as Exh. 5.)

27. While the executor did not view the Unknown Claim Proceeds to be an asset of the Estate, the Executor nonetheless informed the IRS that the Estate had received the two checks in payment of settlement proceeds.

28. Upon completion of the examination, Mertie Mills, an IRS attorney, issued a Discussion Draft of a Report of Estate Tax Examination Changes dated May 10, 2002 (the "Discussion Report") outlining the IRS's view of, among other things, the value of the Unknown Claim as of the DOD. (A copy of the Discussion Report is attached as Exhibit 6.)

29. The Discussion Report indicated a value of the Unknown Claim of $363,600.00 as of the DOD, including in the Decedent's gross estate an asset equal to the full amount of the Unknown Claim Proceeds for federal estate tax purposes.

30. After some discussion, the IRS offered to reduce the estate tax value of the Unknown Claim to reflect a discount for the fact that the Unknown Claim Proceeds were not received by the Estate until almost two (2) years after the DOD.

31. The IRS Value ($318,773) was used as the basis for the Report of Estate Tax Examination Changes (the "Final IRS Report"). A copy of the Final IRS Report is attached as Exhibit 7.)

32. The Estate paid Estate Taxes based on the IRS Value.

33. The Estate submitted the Refund Request on June 30, 2004.

34. The Refund Request sought a refund of $144,454.43 for Estate Taxes that were overpaid, plus any amounts paid for interest on the $144,454.43, plus interest on the amounts due to be refunded, plus further reductions in Estate Taxes (plus interest thereon) for increased administrative expenses incurred by the Estate as a result of this claim for a refund.

35. The IRS rejected the Estate's Refund Request by letter dated June 23, 2005. (*See* Refund Denial, Exhibit 4.)

### Count I—Refund of Tax Overpayment

36. The Estate repeats and realleges the allegations of paragraphs 1 through 35, inclusive, as if fully stated here.

37. The Estate paid Estate Taxes based on the IRS Value of $318,773.00 for the Unknown Claim when the value of the Unknown Claim as of the DOD was less than one dollar ($1.00).

38. The United States government will be unjustly enriched to the extent it retains possession of the Estate Taxes paid based on the IRS Value.

39. The Estate is entitled to a refund of at least the following: (i) all Estate Taxes paid computed on the IRS Value of the Unknown Claim; (ii) all interest paid on account of the late payment of Estate Taxes on account of the IRS Value of the Unknown Claim; (iii) interest on the amounts due to be refunded; and (iv) amounts related to the Estate Taxes and interest fairly credited to the Estate for the increased administrative expenses caused by this claim for refund.

WHEREFORE, Plaintiff demands judgment equal to at least the amount requested in the Refund Request ($144,454.43), plus interest paid on such amount, plus interest on these amounts from the dates such amounts were paid until the date the judgment is paid, plus amounts related to Estate Taxes and interest to be credited to the Estate for increased administrative expenses, plus all such other relief as the Court may deem just, including the award of reasonable litigation costs incurred in this proceeding under 26 U.S.C. § 7430.

PRICKETT, JONES & ELLIOTT, P.A.

BY: MASON E. TURNER (DE BAR ID #661)
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DELAWARE 198991328
(302) 888-6508
ATTORNEYS FOR PLAINTIFF