# EXHIBIT "6"

Internal Revenue Service

*Rec'd 5/15/02*

Department of the Treasury

Internal Revenue Service
Estate & Gift Tax Group 1704
409 Silverside Road, Room 101
Wilmington, DE  19809

Date: May 10, 2002

James P. Dalle Pazze, Esquire
Herdeg, du Pont & Dalle Pazze, LLP
One Commerce Center, Suite 500
1201 Orange Street
Wilmington, DE  19801-1140

Person to Contact:  Mertie L. Mills
*Badge No. 51-00296*
Telephone Number:  (302)791-4542
*Ext. 239*
Fax Number:
(302)791-4546

Refer Reply To:  E:1704:MLM

Re:  Estate of Walter S. Bandurski

Dear Mr. Dalle Pazze:

Enclosed is a copy of a DISCUSSION DRAFT for the Estate of Walter
S. Bandurski showing the recomputed estate tax liability.
The corrected items are detailed in the proposed report.  If you have
any questions concerning this report or any matter discussed during
this examination, please call.  My phone number is listed above.

If you and your client agree with the proposed changes, please have
the enclosed Form 890, Waiver of Restrictions on Assessment and
Collection of Deficiency and Acceptance of Overassessment - Estate and
Gift Tax, executed and returned to me.  Also, please complete the
enclosed Declaration of Fee Form 4421 and Power of Attorney Form 2848
and return to me.

To stop the running of interest, you may pay the additional tax
shown on the draft (See Form 1273, line 29) by check made to the order
of "U.S. Treasury Department"; otherwise, you will be billed.  Your
payment should include the additional tax plus interest from the due
date of the return, to the date of payment.  Interest amounts to
$30,642.22, and for purposes of this DISCUSSION DRAFT has been
deducted on Schedule J.

Thank you for your efforts to conclude this examination.  Again,
please call if you have any questions.

Sincerely yours,

Mertie L. Mills
Attorney (Estate Tax)

Encl: as noted
      Forms 2848 and 4421
      Publications 1, 5 and 594

Department of the Treasury - Internal Revenue Service

**Form 890**
(Rev. Oct. 1988)

**Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment -- Estate, Gift, and Generation-Skipping Transfer Tax**

(Please see the instructions on the second page of this form)

Date Received by Internal Revenue Service

## Part 1. Consent to Assessment and Acceptance of Overassessment

I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown below, plus any interest provided by law. I understand that by my signing this waiver, a petition to the United States Tax Court may not be made, unless additional deficiencies are determined.

Date of Death or Period Ending    8/26/1998

| Item | Increase | Decrease |
|---|---|---|
| Tax | 144,454.43 | |
| Penalty | | |
| Total | 144,454.43 | |

If the estate is required to file with the Area Director of Internal Revenue evidence of payment of estate, inheritance, legacy, succession, or generation-skipping transfer taxes to any State or the District of Columbia, I understand that such evidence must be filed by                , or the credits for these taxes will not be allowed. I also agree to the assessment and collection of the increase in estate tax and penalties of                based on the disallowed credits, plus interest figured to the 30th day after                or until this increase is assessed, whichever is earlier.

Estate of    Walter S. Bandurski

| Executor or Administrator | Sign \ Here /<br>Address | Date |
|---|---|---|
| Executor or Administrator | Sign \ Here /<br>Address | Date |

| Donor | Name | Address |
|---|---|---|

| Donor's Signature | Sign \ Here / | Date |
|---|---|---|

## Part 2. Unified Credit Agreement

I agree to the increase or decrease in the total allowed Unified Credit by the amount shown below.

| Unified Credit | | Increase | | Decrease |
|---|---|---|---|---|
| | | | | |

| Donor | Name | | Address | |
|---|---|---|---|---|
| | | | | |

| Donor's Signature | Sign \ Here / | | | Date |
|---|---|---|---|---|

## Part 3. Gift Tax Marital Deduction

I agree to the increase or decrease in the usage of the gift tax marital deduction by the amount shown below.

| Marital Deduction | | Increase | | Decrease |
|---|---|---|---|---|
| | | | | |

| Donor | Name | | Address | |
|---|---|---|---|---|
| | | | | |

| Donor's Signature | Sign \ Here / | | | Date |
|---|---|---|---|---|

## Instructions

### Consent to Assessment and Acceptance of Overassessment

If you consent to the assessment of the deficiencies shown in Part 1 of the form, please sign the agreement under Part 1 and return the form to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent a claim for refund from being filed (after the tax has been paid) if you later believe it is warranted, not prevent us from later determining that additional tax is owed, nor extend the time provided by law for either action.

If a claim is later filed and the Service disallows it, a suit for refund may be filed in a Federal District Court or in the United States Claims Court, but a petition may not be filed with the United States Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due resulting from any decrease in tax and penalties determined by the Internal Revenue Service, shown on the front of this form, provided part 1 of this form is signed and filed within the period established by law for making such a claim.

### Unified Credit Agreement

If you agree with the increase or decrease of the allowed credit shown in Part 2 of this form, please sign the agreement under Part 2 and return the form.

### Marital Deduction Agreement

If you agree with the increase or decrease in the usage of the gift tax marital deduction by the amount shown in Part 3 of this form, please sign the agreement under Part 3 and return this form.

### Signature Instructions

If the executor or administrator is a corporation, the waiver should be signed with the corporate name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided the action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

Form **890** (Rev. 10-88) (CG)

- : (Rev. ) (CG)

**Form 1273**
(Rev.   ) (CG)

Department of the Treasury - Internal Revenue Service
## Report of Estate Tax Examination Changes

Name of Decedent: **Walter S. Bandurski**

Social Security Number: 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

Date of Death: 8/26/1998

Name of Person With Whom Findings Were Discussed:

Agreement Secured [x] Yes  [ ] No

| | Shown on Return | As Corrected |
|---|---|---|
| Taxable estate shown on return or as previously adjusted | | 2,522,852.39 |
| Increase <decrease> in taxable estate | | 389,795.11 |
| Taxable estate as corrected (line 1 plus (less) line 2) | | 2,912,647.50 |
| Adjusted Taxable Gifts | 0.00 | 0.00 |
| Total | 2,522,852.39 | 2,912,647.50 |
| Tentative Tax | 1,037,911.77 | 1,244,503.18 |
| Aggregate gift taxes payable (after Dec. 31, 1976) | 0.00 | 0.00 |
| Subtract the amount on line 7 from the amount on line 6 | 1,037,911.77 | 1,244,503.18 |
| Unified Credit against estate tax | 202,050.00 | 202,050.00 |
| Adjustment to unified credit | 0.00 | 0.00 |
| Subtract the amount on line 10 from the amount on line 9 | 202,050.00 | 202,050.00 |
| Subtract the amount on line 11 from the amount on line 8 (not less than zero) | 835,861.77 | 1,042,453.18 |
| Credit for State death taxes    174,312.98 Tentatively allowed Submit evidence by (date) | 140,628.19 | 174,312.98 |
| Subtract the amount on line 13 from the amount on line 12 | 695,233.58 | 868,140.20 |
| Credit for Federal gift taxes on pre-1977 gifts | 0.00 | 0.00 |
| Credit for foreign death taxes (Statutory) | 0.00 | 0.00 |
| Credit for tax on prior transfers | 0.00 | 28,452.19 |
| Credit for foreign death taxes (Special Treaty) | 0.00 | 0.00 |
| Total Credits (add the amounts on lines 15, 16, 17, and 18) | 0.00 | 28,452.19 |
| Net estate tax payable | 695,233.58 | 839,688.01 |
| Generation-skipping transfer taxes (Schedule R, Part 2, line 12) | 0.00 | 0.00 |
| Section 4980A - increased estate taxes (Schedule S) | 0.00 | 0.00 |
| Total transfer taxes (add the amounts on lines 20, 21 and 22) | 695,233.58 | 839,688.01 |
| Total transfer tax previously assessed | | 695,233.58 |
| Total transfer tax - Increase <decrease> (difference between line 23 and line 24) | | 144,454.43 |
| Penalty previously assessed | | 0.00 |
| Penalties as corrected | | 0.00 |
| Net penalties - Increase <decrease> (difference between line 26 and line 27) | | 0.00 |
| tax and penalties payable - Increase <decrease> (add line 25 and line 28) | | 144,454.43 |

Examiner's Signature: *Mertie L. Mills*   Mertie L. Mills

Area: Delaware-Maryland

Date: 5/10/2002

| Form **3228** | Department of the Treasury - Internal Revenue Service | Schedule |
| (Rev. Oct. 1980) (CG) | **Adjustments to Taxable Estate** | |

| tate of | | Social Security Number | | Date of Death |
| Walter S. Bandurski | | 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 | | 8/26/1998 |

| | | |
|---|---|---|
| Gross estate reported on return | | |
| | | 2,868,366.10 |
| Increase <decrease> to gross estate | | |
| A | Real Estate | 12,132.61 |
| E | All Other Joint Interests | 103,610.80 |
| F | Other Miscellaneous Property | 318,773.00 |
| G | Transfers During Life | 87,303.06 |
| | | |
| | | |
| | | |
| | | |
| Net changes to gross estate | | |
| | | 521,819.47 |
| Corrected gross estate (line 1 & line 3) | | |
| | | 3,390,185.57 |
| ..l deductions reported on return | | |
| | 345,513.71 | |
| Increase <decrease> to deductions | | |
| J | Funeral & Administration Ex. | 78,837.31 |
| K | Debts of Decedent | 53,187.05 |
| | | |
| | | |
| | | |
| Net changes to deductions | | |
| | 132,024.36 | |
| Corrected total deductions (line 5 + line 7) | | |
| | | 477,538.07 |
| Corrected taxable estate (line 4 less line 8) | | |
| | | 2,912,647.50 |

| rm 886-A | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| v. April 1968) (CG) | | |
| E OF TAXPAYER   Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED   8/26/1998 |

|  | Returned | Corrected |
|---|---|---|
| **:h. A, Real Estate** | | |
| :tem 1 - 207 Taft Avenue | 86,367.39 | 98,500.00 |
| | ---------------- | ---------------- |
| Total of these items | 86,367.39 | 98,500.00 |
| | | 86,367.39 |
| | | ---------------- |
| :ncrease to schedule | | 12,132.61 |
| | | ================ |

Item 1.  Real property known as 207 Taft Avenue, Lancaster Village, Wilmington, DE has been adjusted to its fair market value as of the valuation date based upon a sale of the property in an arm's-length transaction within a reasonable time of the valuation date.  Section 20.2031-1(b) of the Federal Estate Tax Regulations.

|  | Returned | Corrected |
|---|---|---|
| **:h. E, All Other Joint Interests** | | |
| :tem 1A - 25 Cannon Run Drive, Newark, DE | 142,889.20 | 161,000.00 |
| :tem 2A - 517 Centre Avenue, Roanoke, VA | 26,200.00 | 28,400.00 |
| :tem 3A - 515 Centre Avenue, Roanoke, VA | 5,200.00 | 5,900.00 |
| :tem 4A - Centre Avenue NW, Roanoke, VA | 2,600.00 | 2,900.00 |
| :tem 5A - 11.17 acres, Roanoke, VA | 57,500.00 | 60,300.00 |
| :t~m 7C - 2630 Marsh Road, Wilmington, DE | 79,500.00 | 159,000.00 |
| | ---------------- | ---------------- |
| Total of these items | 313,889.20 | 417,500.00 |
| | | 313,889.20 |
| | | ---------------- |
| :ncrease to schedule | | 103,610.80 |
| | | ================ |

Item 1A has been adjusted to its fair market value as of the valuation date based upon a sale of the property in an arm's-length transaction within a reasonable time of the valuation date.  Section 20.2031-1(b) of the Federal Estate Tax Regulations.

Items 2A through 5A are increased to fair market value on the valuation date.  Returned value based on the assessed values and values are increased per inspection of of county real estate tax bills.

Item 7C is increased because estate only included a 50% interest; and at date of death, decedent held a 100% interest.  Inspection of Deed verifies decedent and predeceased divorced spouse held the property as joint tenants with right of survivorship.  Fair market value is the appraised value as of date of death.

| orm 886-A<br>ev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| ME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

|  | Returned | Corrected |
|---|---|---|
| ch. F, Other Miscellaneous Property | | |
| Item 9 - Class Action Recovery | 0.00 | 318,773.00 |
| Total of these items | 0.00 | 318,773.00 |
|  | | 0.00 |
| Increase to schedule | | 318,773.00 |

Item 9 is the proceeds received from a class action claim that was
not included on the 706. Decedent was a member of a class action
claim filed against Delaware Solid Waste Authority on May 21, 1998.
The claim resulted in a settlement of the class action January 2000.
The sum of $900,000 was distributed to Walter S. Bandurski, Inc. The
amount paid in respect of the decedent was $363,600.

May 21, 1998, a class action complaint was filed by Sylvester
Jenifer T/A Vernon's Home Improvements, on behalf of itself and all
other similarly situated against Delaware Solid Waste Authority
seeking declaratory and monetary relief to redress the harm resulting
from enforcement of an unambiguously protectionist and facially
unconstitutional regulation promulgated by the Delaware Solid Waste
Authority that prohibits out-of-State disposal of solid waste
generated within the State of Delaware at solid waste facilities, not
operated by, on behalf of, or under contract with DSWA. The action
brought for injunctive relief and to recover damages for injuries
suffered due to the deprivation of plaintiff's rights, privileges or
immunities as secured by the United States Constitution. Complaint
in Pragraph 10 states the plaintiff brings this action on its own
behalf and on behalf of all members of a Class consisting of all
persons in the State of Delaware who delivered and transported solid
waste generated within the State for disposal at solid waste facilities
operated by, on behalf of, or under contract with DSWA and paid
tipping fees to DSWA during the period May 21, 1995 until the
restrictions imposed by DSWA are abrogated. Complaint states
plaintiff does not know the exact size of the Class since such
information is in the hands of the defendant.

Complaint states tipping fees at DSWA were recently reported to be
around $58.50/ton and that out-of-state facilities had the capacity
to accept for disposal solid waste generated within Delaware for
tipping fees considerably lower than those charged by DSWA
Facilities. Complaint states there is no valid State health, safety
or welfare purpose for DSWA Regulation that prohibits out-of-State
disposal of solid waste generated within the State at out-of-State
non-DSWA Facilities. Complaint states DSWA has intentionally and
unconstituionally interfered with interstate commerce by eliminating
competition in the solid waste disposal market.

Attorney David Staats, who filed the class action complaint, states
in his October 17, 2000, letter that "Walter S. Bandurski, Inc., was
not a named plaintiff in the Complaint filed May 22, 1998, but was a
member of the class." Mr. Statts further states in his letter that
he did not speak with any representative of Walter S. Bandurski, Inc.,
until after the first complaint was filed. Mr. Staats in his October

| ɔrm 886-A | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| ev. April 1968) (CG) | | |
| ᴍE OF TAXPAYER  Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED  8/26/1998 |

## ᴄʜ. F, Other Miscellaneous Property (Continued)

17, 2000, letter states that a "retainer agreement was signed by a represenative of Walter S. Bandurski, Inc. on September 28, 1998." October 2, 1998, Walter S. Bandurski, Inc., joined the second class action.  The Federal Estate Tax was filed November 26, 1999.  Mr. Staats in his December 6, 2000, letter states that the "fair market value of an asset does not depend on whether the owner of the asset is aware that he owns it."

Representative's letter of December 13, 2000, states the claim was unknown to the decedent at the time of his death. The ownership of that inchoate claim was effectively distributed to the stockholders by Walter S. Bandurski, Inc. when Walter S. Bandurski, Inc. was liquidated and disssolved.  The claim was effectively included in the transfer to the decedent's revocable grantor trust upon the transfer of his distribution rights to that trust.

For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property.  Internal Revenue Code Sections 2031(a), 2033.  The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  Section 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d483, 485 (11th Cir. 1987_, affg. T.C. Memo. 1985-595.  The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property.  Estate of Watt v. Commissioner, supra at 486.  Valuation is to be based on facts reasonably known at the date of valuation.  Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation.  Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987).

Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.  As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate.  United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinon of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F.Supp. 944 (E.D. Pa.

In Estate of Jeanne M. Houston v. Commissioner, 44 T.C.M. 284 (1982), the Court found that the decedent's interest in a wrongful death action that was contingent upon future recovery by her deceased spouse's estate did not preclude inclusion of the wrongful death action in her gross estate.  Decedent's previously deceased spouse died in 1972 as a a result of being struck by an automobile while in Michigan.  Decedent died March 17,1974, and her executor on December

| orm 886-A<br>ev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| ME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

## ch. F, Other Miscellaneous Property (Continued)

16, 1974, filed suit for her deceased spouse's wrongful death.
Action was settled prior to trial and proceeds were distributed to
deceased spouse's surviving children. Estate did not include any
amount in the estate tax return representing the value of the
decedent's interest in the wrongful death claim arising out of husband's
death. The court noted that "her rights of action accrued at the time
of her husband's death and continued in existence, through her estate,
beyond her own death some 14 months later."

The decedent's cause of action accrued prior to his death; and under
Section 2031, 2033 and Estate Tax Regs. section 20.2033-1, the gross
estate shall include the date of death value of all property, whether
real or personal, tangible or intangible, beneficially owned by the
decedent. This includes the date of death values of all existing
claims and choses in action of the decedent that pass to the
estate, notwithstanding that they may be contingent and/or uncertain
as to amount. Estate of Curry v. Commissioner, 74 T.C. 540 (1980).
The decedent at the time of his death did have a claim against Delaware
Solid Waste Authority which should have been reported on the
decedent's Federal Estate Tax Return. The Tax Court has said that
ignorance of an asset at date of death does not determine that the
asset is valueless or should not be included as an asset of the
estate:

> Even if the executors were totally ignorant of the claim, we do
> not agree that it would for that reason be without value. An estate
> may possess many assets, tangible and intangible, of which the
> deceased's representative or even the deceased himself may be
> unaware, and which may not become apparent until the lapse of a
> substantial period of time after death. Such property is for that
> reason no less an asset of the estate, nor can it necessarily be said
> to be valueless at the date of death. This is particularly true
> where, as here, the asset is one which by its nature is discoverable
> in the ordinary course of administration of the estate. Estate of
> I. W. Baldwin, 1959, P-H. T.C. Memo P59, 203.

In this case, the decedent's company was included in the class action
before the Federal Estate Tax Return was filed and should have been
disclosed on the Return. "(I)gnorance of the value of an asset at
the time of a decedent's death does not justify treating the asset
as valueless, any more than ignorance of the existence of an
asset, discovered after the date of death, justifies exclusion of
the asset from the decedent's gross estate." Simmons at 217.

The fact that the settlement of the lawsuit resulted in a payment of
$900,000 to Walter S. Bandurski, Inc., is highly indicative of the fact
that the claim had value at the time of decedent's death.

The cases hold that unsettled litigation is an asset of the estate
and is to be included in the gross estate at its estimated fair market
value at date of death, notwithstanding that it may be contingent
and/or uncertain as to amount.

To determine the proper valuation, all the facts and circumstances
surrounding the claim must be examined. Since the value of the claim

| Form 886-A<br>Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| ME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

## CH. F, Other Miscellaneous Property (Continued)

was not fixed as of date of death, subsequent events may be used as evidence of value. Estate of Curry v. Commissioner, supra. The court in the Houston case found the fair market value of the claim was $75,000. The claim was settled for $132,500 with net proceeds of $48,133.31. The court stated "(W)hile it may seem anomalous that the amount to be included in the gross estate exceeds the actual net recovery from the wrongul death action, the latter is not controlling in the determination of date of death value." Id. at 288.

In Estate of Davis v. Commissioner, 65 T.C.M. 2365 (1993), the Tax Court addressed the issue of how to value a cause of action which remained unsettled at the decedent's death. In Davis, the decedent initiated a lawsuit against Merrill Lynch for churning her account. The Court stated that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation. The court began with the amount of the claim as if there were no contest and then discounted the claim for 1) costs of litigation, 2) hazards of litigation, and 3) time delay in receiving the funds. The court used only a limited discount for the hazards of litigation because of the relative ease of proving the churning would result only in negligible risks or hazards of success in litigating.

The subject case is similar for the facts show that Delaware Solid Waste Authority was guilty of charging exorbitant and uncompetitive tipping fees and restricted the free flow of commerce amongst the States. Further evidence of the fact that the plaintiffs had a good case is the fact that the case was settled prior to trial with a payment of $900,000 to Walter S. Bandurski, Inc. Costs of litigation are included in the settlement. The only reduction that should be made to the settlement proceeds is the time delay in receiving the funds.

The representative of the estate is relying primarily on a line of cases that conclude that postdeath events may not be used in evaluating claims or deductions against an estate, Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Ballantine v. Tomlinson, 293 F.2d 311 (5th Cir., 1961); Propstra v. United States 680 F.2d 1248 (9th Cir., 1982); and Estate of Evelyn M. McMorris v. Commissioner, 243 F.3d 1254 (10th Cir., 2001). Section 2053 simply provides that such claims are deductible in determining the taxable estate if they are legally enforceable, i.e., are as allowable by the laws of the jurisdiction, whether within or without the United States, in which the estate is being administered. Treasury regulation section 20.2053-4 states the amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. The Court of Appeals has acknowledged that the "law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims." Propstra v. United States, supra at 1253. The court held that section 2053 precludes the consideration of post-death events in computing the value of certain and enforceable claims against an estate. This line of cases is not applicable when valuing assets of the estate.

| Form 886-A Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| ᴀME OF TAXPAYER     Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

## ᴄʜ. F, Other Miscellaneous Property (Continued)

Unsettled litigation which is an asset of the estate is included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount.  See IRC sections 2032 and 2033.  In contrast see Reg. Section 20.2053-1(b)(3) which disallows a deduction from the estate that is taken upon the basis of a vague or uncertain estimate.  The date-of-death valuation rule applies to a deduction for a claim against the estate under IRC section 2053-1(a)(3).  As a a result, events which occur after the decedent's death may not be considered in valuing that deduction.  The cases hold that in valuing assets of a decedent, subsequent events can be used to determine fair market value particularly when valuing the fair market value of a pending lawsuit as of date of death.

Estate is relying on Welch v. Commisisoner, 6th Cir. No. 98-2007, March 2, 2000, in which the court held that potential built-in capital gains tax liability should be considered in valuing an asset. This tax in reality may never be paid; therefore, it is an estimate and not a certain event.  The estate also relied on First National Bank of Kenosha v. United States, 763 R.2d 891 (7th Cir., 1985) in which the court allowed  evidence of actual sales prices received 21 months after the date of death so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property.  Settlement of the subject claim within 20 months of the filing of the lawsuit is certainly a reasonable length of time.  There were no intervening events that drastically changed the value of the asset.  The lawsuit is not a subsequent event but was ongoing at date of death.  It was not beyond the contemplation of the parties on the relevant valuation date.

Estate is also relying on Estate of Mary B. Bull v. Commisisoner, T.C. Memo 2001-92 (April 13, 2001).   The Bull case can be distinguished based on the fact that at date of death the estate had no right to insurance reimbursement and no obligation to pay to complete the decedent's residence which was destroyed by fire and was being retored at the time of her death. The court stated that the situation is unlike the situation "where a contingent legal fee was includable in an estate based on the rationale that it had been earned and a claim existed at the time of death."  In the subject case, the claim existed at date of death and is includible in the decedent's estate at its fair market value.

The estate has not presented any evidence as to the fair market value of the class action claim as of date of death of the decedent.  The class action claim is included at the present value based on a 6.800% rate which is the applicable federal rate for August 1998, see Revenue Ruling 98-36.  The present value for proceeds of $363,600 received 17 months after date of death is $318,773.

| orm **886-A**<br>ev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|

| ME OF TAXPAYER<br>Estate of Walter S. Bandurski | YEAR/PERIOD ENDED<br>8/26/1998 |
|---|---|

**ch. G, Transfers During Life**

|  | Returned | Corrected |
|---|---|---|
| Item 1 - 37814 shares Waste Management | 1,849,482.74 | 1,936,785.80 |
|  | ----------------- | ----------------- |
| Total of these items | 1,849,482.74 | 1,936,785.80 |
|  |  | 1,849,482.74 |
|  |  | ----------------- |
| Increase to schedule |  | 87,303.06 |
|  |  | ================ |

Item 1.  Item is adjusted to the mean between the highest
and lowest quoted selling prices on the valuation date.  Section
20.2031-2 of the Federal Estate Tax Regulations.

**ch. J, Funeral & Administration Ex.**

|  | Returned | Corrected |
|---|---|---|
| B.2 - Attorney fees | 30,000.00 | 64,614.00 |
| B.3 - Accountant fees | 12,500.00 | 18,000.00 |
| B.10 - Furniture Moving Expenses | 0.00 | 1,864.93 |
| B.11 - Interest on the Deficiency | 0.00 | 30,642.22 |
| B.12 - Environmental Valuation | 0.00 | 6,216.16 |
|  | ----------------- | ----------------- |
| Total of these items | 42,500.00 | 121,337.31 |
|  |  | 42,500.00 |
|  |  | ----------------- |
| rease to schedule |  | 78,837.31 |
|  |  | ================ |

Deductions for expenses incurred in the administration of the
decedent's estate have been adjusted to reflect the amounts allowable
under Code section 2053.

An adjustment has been provided to allow a deduction for Federal
interest computed to be due and owing on the Estate tax
deficiency, pursuant to the provisions of Revenue Ruling 79-252,
1979-2 C.B. 333.

This deduction is only allowable in AGREED issue cases.
Refer to the detailed interrelated computation (attached as an Exhibit).

| Form **886-A** | | |
|---|---|---|
| Rev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR EXHIBIT |
| AME OF TAXPAYER | | |

| Estate of Walter S. Bandurski | YEAR/PERIOD ENDED 8/26/1998 |
|---|---|

**ch. K, Debts of Decedent**

|  | Returned | Corrected |
|---|---|---|
| Item 31 - CoreStates Bank | 25,126.43 | 24,770.15 |
| Item 33 - Mortgage on 207 Taft Avenue | 0.00 | 36,743.33 |
| Item 34 - WSB Corp. Income Taxes | 0.00 | 16,800.00 |
| Total of these items | ---------------- 25,126.43 | ---------------- 78,313.48 |
|  |  | 25,126.43 |
|  |  | ---------------- |
| Increase to schedule |  | 53,187.05 |
|  |  | ================ |

   Deductions for claims against the decedent's estate, the decedent's
unpaid debts, mortgages and/or liens have been adjusted to reflect
amounts allowable under Code section 2053.

**3ch. Q, Tax on Prior Transfer Credit**

|  | Returned | Corrected |
|---|---|---|
|  | 0.00 | 28,452.19 |
|  |  | 0.00 |
|  |  | ---------------- |
| Increase to schedule |  | 28,452.19 |
|  |  | ================ |

**redit for Tax on Prior Transfers -- Worksheet**
redit for tax on Prior Transfers - Summary

```
ransferor A: Barbara A. Bandurski          DD:  8/ 7/1998
ransferor B:                               DD:
ransferor C:                               DD:
```

|  | A | B | C |
|---|---|---|---|
| Transferee's tax | 35,139.00 | 0.00 | 0.00 |
| Transferor's tax | 28,452.19 | 0.00 | 0.00 |
| Max before Percent | 28,452.19 | 0.00 | 0.00 |
| Percentage Allowed | 100% | 0% | 0% |
| Credit Allowable | 28,452.19 | 0.00 | 0% |

   TOTAL CREDIT ALLOWABLE                              28,452.19

| Form 886-A (Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER | Estate of Walter S. Bandurski | YEAR/PERIOD ENDED 8/26/1998 |

## Q, Tax on Prior Transfer Credit (Continued)

### PART I, TRANSFEROR'S TAX ON PRIOR TRANSFERS

| | A | B | C |
|---|---|---|---|
| Gross value - transfer | 79,500.00 | 0.00 | 0.00 |
| Death taxes payable | 0.00 | 0.00 | 0.00 |
| Encumbrances allocable | 0.00 | 0.00 | 0.00 |
| Obligations allocable | 0.00 | 0.00 | 0.00 |
| MD applicable | 0.00 | 0.00 | 0.00 |
| Total Reductions | 0.00 | 0.00 | 0.00 |
| Net Value of Transfer | 79,500.00 | 0.00 | 0.00 |
| Net Value of All Transfers | | | 79,500.00 |
| | | | |
| Transferor's taxable est | 2,126,166.49 | 0.00 | 0.00 |
| Federal estate tax paid | 531,678.26 | 0.00 | 0.00 |
| State death tax paid | 108,893.32 | 0.00 | 0.00 |
| Foreign death tax paid | 0.00 | 0.00 | 0.00 |
| Other death tax paid | 0.00 | 0.00 | 0.00 |
| Total Reductions | 640,571.58 | 0.00 | 0.00 |
| Value, transferor's est | 1,485,594.91 | 0.00 | 0.00 |
| | | | |
| Net federal estate tax | 531,678.26 | 0.00 | 0.00 |
| Credit, gift tax paid | 0.00 | 0.00 | 0.00 |
| Transferor's TPT credit | 0.00 | 0.00 | 0.00 |
| Tax on transferor's est | 531,678.26 | 0.00 | 0.00 |
| Transferor tax-transfer | 28,452.19 | 0.00 | 0.00 |

### PART II, TRANSFEREE'S TAX ON PRIOR TRANSFERS

| | | |
|---|---|---|
| Tax before TPT Credit | | 868,140.20 |
| Transferee's Gross Estate | | 3,390,185.57 |
| Net Value of All Transfers | | 79,500.00 |
| Transferee's reduced gross estate | | 3,310,685.57 |
| Total debts & deductions (before MD & CD) | 477,538.07 | |
| Marital Deduction | 0.00 | |
| Charitable Bequests | 0.00 | |
| Charitable Deduction Proportion | 0.00 | |
| Reduced Charitable Deduction | 0.00 | |
| Transferee's deductions as adjusted | | 477,538.07 |
| (a) Transferee's reduced taxable estate | | 2,833,147.50 |
| (b) Adjusted taxable gifts | | 0.00 |
| (c) Total reduced taxable estate | | 2,833,147.50 |
| Tentative tax on reduced taxable estate | | 1,202,368.18 |
| (a) post 1976 gift taxes paid | 0.00 | |
| (b) unified credit | 202,050.00 | |
| (c) section 2011 State death tax credit | 167,316.98 | |
| (d) section 2012 gift tax credit | 0.00 | |
| (e) section 2014 foreign death tax credit | 0.00 | |
| (f) Total credits | | 369,366.98 |
| Net Tax on Reduced Taxable Estate | | 833,001.20 |
| Transferee's Tax on Prior Transfers | | 35,139.00 |

Estate of: wb,  DD:  8 26 1998
File Name: C:\Program Files\EST3\wb.ET3
Inter-Est Version 3.00, Release 78, (Standard Output) (#1373)
Date and time of run: Friday, May 10, 2002, 01:50 PM

## MAIN PRINTOUT SECTION

| | | | |
|---|---:|---:|---:|
| Gross Estate | | | 3,390,185.57 |
| Sch. JK&L (before interrelated) | 446,895.85 | | |
| Int, Federal | 30,642.22 | | |
| Debts & Expenses | | 477,538.07 | |
| Marital Deduction | | 0.00 | |
| Charitable Deduction | | 0.00 | |
| Total Deductions | | | 477,538.07 |
| Taxable Estate | | | 2,912,647.50 |
| Adjusted Taxable Gifts | | | 0.00 |
| Total Amount Drawing Tax | | | 2,912,647.50 |
| Tentative Tax | | | 1,244,503.18 |
| Aggregate Gift Tax Payable | | | 0.00 |
| Tax before Unified Credit | | | 1,244,503.18 |
| Unified Credit from Table | | 202,050.00 | |
| Adjustment to Unified Credit | | 0.00 | |
| Net Unified Credit | | | 202,050.00 |
| Tax before SDTC | | | 1,042,453.18 |
| State Death Tax Credit | | | 174,312.98 |
| Net Tax after State Death Tax Credit | | | 868,140.20 |
| Gift Tax Credit | | 0.00 | |
| Foreign Death Tax Credit (Statutory) | | 0.00 | |
| Prior Transfer Credit | | 28,452.19 | |
| Foreign Death Tax Credit (Treaty) | | 0.00 | |
| Total Credits | | | 28,452.19 |
| Estate Tax | | | 839,688.01 |
| Generation Skipping Transfer Tax | | | 0.00 |
| Total Federal Tax | | | 839,688.01 |

## CREDIT FOR TAX ON PRIOR TRANSFERS - FORM 3229

| | | |
|---|---:|---:|
| Line 21, Tax before TPT | 868,140.20 | |
| Line 22, Total Gross Estate | 3,390,185.57 | |
| Line 23, Net Value, All Transfers | 79,500.00 | |
| Line 24, Reduced Gross Estate | 3,310,685.57 | |
| Line 25, Debts & Deductions | 477,538.07 | |
| Line 27, M.D. for 2nd Limitation | 0.00 | |
| Line 28, Charitable Deduction | 0.00 | |
| Line 29, C.D. Proportion | 0.00 | |
| Line 30, C.D. for 2nd Limitation | 0.00 | |
| Line 31, Deductions as Adjusted | 477,538.07 | |
| Line 32(a), Taxable for 2nd Limitation | | 2,833,147.50 |
| Line 32(b), Adj. Taxable Gifts | | 0.00 |
| Line 32(c), Total Reduced Taxable Estate | | 2,833,147.50 |
| Line 33(a), Tentative Tax | | 1,202,368.18 |
| Line 33(a)(i), Post 1976 G.T. Paid | 0.00 | |
| Line 33(a)(ii), Unified Credit | 202,050.00 | |
| Line 33(a)(iii), S.D.T. Credit | 167,316.98 | |
| Line 33(a)(iv), Gift Tax Credit | 0.00 | |
| Line 33(a)(v), F.D. Tax Credit | 0.00 | |
| Line 33(b), Tax on Red. Tax. Estate | | 833,001.20 |
| Line 40, Second Limitation | | 35,139.00 |

page 18

Estate of: wb, DD:  8 26 1998

Name of Transferor: bb

| | |
|---|---|
| Line 7, Net Transfer | 79,500.00 |
| Line 20, First Limitation | 28,452.19 |
| Line 35, Second Limitation | 35,139.00 |
| Line 37, Controling Limitation | 28,452.19 |
| Line 38, Percent Allowable | 100.0000000 % |
| Line 39, Credit Allowable | 28,452.19 |

## FEDERAL INTEREST OPTION SELECTED

Interest Table File: C:\Program Files\EST3\Federal.IT4
Interest Table Description: Federal (RProc 95-17)(12/01)
Special Interest Rate Used (old):    4.0000000 %
Special Interest Rate Used (new):    2.0000000 %
INTEREST FACTORS USED

| | Regular (100%) | Special (old) | Refund |
|---|---|---|---|
| Pd # 1  c | 5.6297592 % | 2.7764934 % | 5.6297592 % |
| Pd # 2  c | 20.0771407 % | 9.7631710 % | 20.0771407 % |

PART 1

| | Date | Tax Pmt. | Int. Pmt. | |
|---|---|---|---|---|
| Due Date | 5 26 1999 | 849,400.00 | 0.00 | P |
| Pd # 1 | 1 31 2000 | <154,166.41> | <8,714.79> | |
| Pd # 2 | 5 31 2002 | -------------- | -------------- | |

P = Period entry for Interest on Penalty Computation

PART 2

| | Starting Balance | Tax Paid | Interest Balance | Applied To Balance |
|---|---|---|---|---|
| Due Date | 839,688.01 | 849,400.00 | 0.00 | 849,400.00 |
| Pd # 1 | <9,711.99> | <154,166.41> | 8,168.03 | <154,166.41> |
| Pd # 2 | 144,454.42 | 0.00 | 38,810.25 | 0.00 |

PART 3

| | Interest Drawing Int. | Total Amount Drawing Int. | Interest Factor | Interest |
|---|---|---|---|---|
| Pd # 1 | 0.00 | <9,711.99> | 5.6297592 % | 0.00 |
| Pd # 2 | 8,168.03 | 152,622.45 | 20.0771407 % | 30,642.22 |
| Total Interest Deduction | | | | 30,642.22 |

LAST LINE OF PRINTOUT

# EXHIBIT "7"

·te:062802

                                        Estate of:
                                        Walter S. Bandurski
                                        Date of Death:
                                        August 26,1998
                                        Person to Contact:
Susanna Brooks                          CUSTOMER SERVICE
PERSONAL REPRESENTATIVE                 Contact Telephone Number:
2630 Marsh Rd.                          1 (800) 829-1040
Wilmington, DE 19810


DEAR MADAM:

    Enclosed is a copy of our examination report showing adjustments you
agreed to for the above estate.  We have also enclosed the letter checked
below.  If letter 628(DO) is enclosed, please provide the information it
requests.

    If you overpaid the estate tax, a refund will be sent to you, provided
you owe no other taxes.  The refund will include any interest due.  If you
underpaid the estate tax, we will bill you for any additional amount due,
 .us interest.

    If you have any questions, please contact the person whose name and
telephone number are shown above.

    You may want to tell your attorney that you received this letter.

    Thank you for your cooperation.


                    Sincerely yours,




                    Joel Goverman
                    Area 4 Director, Small Business Compliance


Enclosures:
Examination Report
[✓] Letter 627(DO)
[ ] Letter 628(DO)
 ] Envelope


P.O. Box 583, Baltimore, MD  21203            Letter 922(DO)(Rev. 1-79)

Internal Revenue Service                    Department of the Treasury
Area Director

Date: 062802                          Estate of:
                                      Walter S Bandurski
                                      Decedent's Social Security Number:
                                      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V
                                      Date of Death:
Susanna Brooks                        August 7, 1998
PERSONAL REPRESENTATIVE               Person To Contact:
2630 Marsh Rd.                        CUSTOMER SERVICE
Wilmington, DE 19810                  Contact Telephone Number:
                                      1 (800) 829-1040

DEAR MADAM:

          Estate Tax Closing Letter (This is not a bill for tax due)

     Our computation of the Federal tax liability for the above estate is shown
below.  It does not include any interest or late payment penalties that may be
charged.  Other penalties have been considered in the computation of net estate
tax below.  You should close the probate proceedings for the estate.  This letter
is evidence that the Federal tax return for the estate has either been accepted
as filed, or has been accepted after an adjustment that you agreed to.

     This is not a formal closing agreement under Section 7121 of the Internal
Revenue Code.  We will not reopen this case, however, unless Revenue
Procedure 85-13 reproduced on the following page applies.

     If you have any questions, please contact the person whose name and
telephone number are shown above.  Thank you for your cooperation.


                              Sincerely yours,



CC:  James P. Dalle Pazze


                         Joel Goverman
                         Area 4 Director, Small Business Compliance
-------------------------------------------------------------------------------
Tentative tax . . . . . . . . . . . . . . . . . . . . . . $1,244,503.18


Less: Aggregate gift taxes payable
        (for gifts made after 12-31-76) . . . . . . . . $         0.00
      Unified credit . . . . . . . . . . . . . . . $    202,050.00
      Credit for State death taxes . . . . . . . . . $    174,312,98
      Credit for Federal gift taxes
        (on gifts prior to 1-1-77) . . . . . . . . . $         0.00
      Credit for foreign death taxes
        (on gifts prior to 1-1-77) . . . . . . . . . $         0.00
      Credit for tax on prior transfers . . . . . . . $     28,452.19

Total subtractions . . . . . . . . . . . . . . . . . . $    404,815.17
Net estate tax . . . . . . . . . . . . . . . . . . . . $    839,688.01
Generation-skipping transfer taxes . . . . . . . . . . . $         0.00
Penalties, if any . . . . . . . . . . . . . . . . . . . $         0.00
-------------------------------------------------------------------------------
                         -See next page-
P.O. BOX 538, BALTIMORE, MD  21203          Letter 627 (DO) (Rev. 6-86)B

Rev. Proc. 85-13

## SECTION 1.  PURPOSE

The purpose of the Revenue Procedure is to restate and amplify the conditions under which a case closed after examination in the office of a District Director of Internal Revenue may be reopened to make an adjustment unfavorable to the taxpayer.

This procedure contains a listing of certain types of cases wherein reconsideration is not considered a reopening and makes clear that cases closed after examination by service centers require application of reopening procedures.

## SEC. 2.  SCOPE

This procedure pertains to all cases, regardless of type of tax, in which the prior audit and conference action, if any, did not extend beyond the jurisdiction of the office of the District Director. It does not apply to cases previously closed after consideration by Appeals Offices or District Counsels.

## SEC. 3.  DEFINITIONS

.01 Closed Case:

1. A case agreed at the district level is considered closed when the taxpayer is notified in writing, after district conference, if any, of adjustments to tax liability or acceptance of the taxpayer's return without change.

2. An unagreed income, estate or gift tax case is considered closed when the period for filing a petition with the United States Tax Court specified in the statutory notice of deficiency issued by the District Director expires and no petition was filed.

3. An unagreed excise or employment tax case is considered closed when the period for filing protest and requesting consideration by the Appeals Office specified in the preliminary letter expires and no protest or request for Appeals consideration is filed.

.02 Examinations and Reopening:

1. Contacts with taxpayers to correct mathematical errors are not examinations or reopenings.

2. Contacts with a taxpayer to verify or adjust a discrepancy between the taxpayer's tax return and information returns, including late or amended information returns, are not examinations or reopenings. For this purpose, information returns include returns and amended returns filed by partnerships, fiduciaries and small business corporations.

3. A contact to verify a discrepancy disclosed by an information return matching program may include inspection of the taxpayer's books of account, to the extent necessary to resolve the discrepancy, without being considered an inspection within the meaning of section 7605(b) of the Code. A contact to verify an item of income shown on an information return to a tax return is not a verification of a discrepancy where such item of income is not required to be shown as a specific line item on a tax return. For example, insurance companies making payments to a doctor of $600 or more during a calendar year must furnish the doctor a Form 1099–MISC. The doctor is only required to include that income with other gross receipts on Schedule C, Form 1040. If the doctor reported gross receipts of a larger amount than the total amount of income shown on Form 1099–MISC, there would not be a discrepancy between the information returns and the income tax return.

4. A contact with an investor to verify the accuracy of, or the need for, a Tax Shelter Registration number is not an examination within the meaning of Section 7605(b) of the Code. To the extent that the contact is to determine the need for a Tax Shelter Registration number, the information sought would be limited to obtaining the name and address of the promoter.

5. The adjustment of an unallowable item, or an adjustment resulting from other types of service center correction programs, is not considered to be an examination. Therefore, a subsequent examination does not constitute a reopening of a case closed after examination.

6. Reconsideration of a case is not considered a reopening and therefore, requires no approval or issuance of form letter (DO/IO/SC) if it involves:

(a) Cases involving section 1311 of the Code.

(b) Cases involving the year of deduction of a net operating loss carryback or similar type of carryback under other provisions of the Code.

(c) Cases in which there have been involuntary conversions and the taxpayer has not recomputed his/her tax liability because he/she did not replace the property within the time provided by section 1033 of the Code.

(d) Cases involving an overpayment in excess of $200,000, subject to consideration by the Joint Committee on Taxation under section 6405 of the Code.

## SEC. 4.  POLICY

.01 The Internal Revenue Service will not reopen any case closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer unless:

1. There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; or

2. The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or

3. Other circumstances exist that indicate failure to reopen would be a serious administrative omission.

.02 All reopening must be approved by the Chief, Examination Division (District Director in Streamlined District), or Chief, Compliance Division, for cases under his/her jurisdiction. If an additional inspection of the taxpayer's books of account is necessary, the notice to the taxpayer required by section 7605(b) of the Code must be signed by the Chief, Examination Division (District Director in Streamlined Districts), or Chief, Compliance Division, for cases under his/her jurisdiction.

## SEC. 5.  EFFECT ON OTHER DOCUMENTS

This Revenue Procedure supersedes Rev. Proc. 83–19, 1983–1 C.B. 677.

Letter 627(DO) (Rev. 6–86)

Form **1273**
(Rev.    ) (CG)

Department of the Treasury - Internal Revenue Service

## Report of Estate Tax Examination Changes

| Name of Decedent | | |
|---|---|---|
| Walter S. Bandurski | Social Security Number: 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 | Date of Death: 8/26/1998 |

Name of Person With Whom Findings Were Discussed:

Agreement Secured [x]Yes  ( )No

| Line | Description | Shown on Return | As Corrected |
|---|---|---|---|
| 1. | able estate shown on return or as previously adjusted | | |
| 2. | Increase <decrease> in taxable estate | | 2,522,852.39 |
| 3. | Taxable estate as corrected (line 1 plus (less) line 2) | | 389,795.11 |
| 4. | Adjusted Taxable Gifts | | 2,912,647.50 |
| 5. | Total | 0.00 | 0.00 |
| 6. | Tentative Tax | 2,522,852.39 | 2,912,647.50 |
| 7. | Aggregate gift taxes payable (after Dec. 31, 1976) | 1,037,911.77 | 1,244,503.18 |
| 8. | Subtract the amount on line 7 from the amount on line 6 | 0.00 | 0.00 |
| 9. | Unified Credit against estate tax | 1,037,911.77 | 1,244,503.18 |
| 10. | Adjustment to unified credit | 202,050.00 | 202,050.00 |
| 11. | Subtract the amount on line 10 from the amount on line 9 | 0.00 | 0.00 |
| 12. | Subtract the amount on line 11 from the amount on line 8 (not less than zero) | 202,050.00 | 202,050.00 |
| 13. | Credit for State death taxes  174,312.98  Tentatively allowed  Submit evidence by (date) | 835,861.77 | 1,042,453.18 |
| 14. | Subtract the amount on line 13 from the amount on line 12 | 140,628.19 | 174,312.98 |
| 15. | Credit for Federal gift taxes on pre-1977 gifts | 695,233.58 | 868,140.20 |
| 16. | Credit for foreign death taxes (Statutory) | 0.00 | 0.00 |
| 17. | Credit for tax on prior transfers | 0.00 | 0.00 |
| 18. | Credit for foreign death taxes (Special Treaty) | 0.00 | 28,452.19 |
| 19. | Total Credits (add the amounts on lines 15, 16, 17, and 18) | 0.00 | 0.00 |
| 20. | Net estate tax payable | 0.00 | 28,452.19 |
| 21. | Generation-skipping transfer taxes (Schedule R, Part 2, line 12) | 695,233.58 | 839,688.01 |
| 22. | Section 4980A - increased estate taxes (Schedule S) | 0.00 | 0.00 |
| 23. | Total transfer taxes (add the amounts on lines 20, 21 and 22) | 0.00 | 0.00 |
| 24. | Total transfer tax previously assessed | 695,233.58 | 839,688.01 |
| 25. | Total transfer tax - Increase <decrease> (difference between line 23 and line 24) | | 695,233.58 |
| 26. | Penalty previously assessed | | 144,454.43 |
| 27. | Penalties as corrected | | 0.00 |
| 28. | Net penalties - Increase <decrease> (difference between line 26 and line 27) | | 0.00 |
| 29. | ...t tax and penalties payable - Increase <decrease> (add line 25 and line 28) | | 0.00 |
|  |  |  | 144,454.43 |

| Examiner's Signature | Area | Date |
|---|---|---|
| Mertie L. Mills | Delaware-Maryland | 5/10/2002 |

| Form **3228** (Rev. Oct. 1980) (CG) | Department of the Treasury - Internal Revenue Service **Adjustments to Taxable Estate** | Schedule |
|---|---|---|

| Estate of Walter S. Bandurski | Social Security Number 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 | Date of Death 8/26/1998 |
|---|---|---|

| | | |
|---|---|---|
| 1. Gross estate reported on return | | 2,868,366.10 |
| 2. Increase <decrease> to gross estate | | |
| A    Real Estate | 12,132.61 | |
| E    All Other Joint Interests | 103,610.80 | |
| F    Other Miscellaneous Property | 318,773.00 | |
| G    Transfers During Life | 87,303.06 | |
| | | |
| | | |
| | | |
| | | |
| 3. Net changes to gross estate | | 521,819.47 |
| 4. Corrected gross estate (line 1 & line 3) | | 3,390,185.57 |
| 5.   al deductions reported on return | 345,513.71 | |
| 6. Increase <decrease> to deductions | | |
| J    Funeral & Administration Ex. | 78,837.31 | |
| K    Debts of Decedent | 53,187.05 | |
| | | |
| | | |
| | | |
| 7. Net changes to deductions | 132,024.36 | |
| 8. Corrected total deductions (line 5 + line 7) | | 477,538.07 |
| 9. Corrected taxable estate (line 4 less line 8) | | 2,912,647.50 |

Form 3228 (Rev. 10-80) (CG)

PAGE   2

| Form **886-A** (Rev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR EXHIBIT |
|---|---|---|

| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |
|---|---|---|

| | Returned | Corrected |
|---|---|---|
| **Sch. A, Real Estate** | | |
| Item 1 - 207 Taft Avenue | 86,367.39 | 98,500.00 |
| | ----------------- | ----------------- |
| Total of these items | 86,367.39 | 98,500.00 |
| | | 86,367.39 |
| | | ----------------- |
| Increase to schedule | | 12,132.61 |
| | | ================ |

Item 1. Real property known as 207 Taft Avenue, Lancaster Village, Wilmington, DE has been adjusted to its fair market value as of the valuation date based upon a sale of the property in an arm's-length transaction within a reasonable time of the valuation date. Section 20.2031-1(b) of the Federal Estate Tax Regulations.

| | Returned | Corrected |
|---|---|---|
| **Sch. E, All Other Joint Interests** | | |
| Item 1A - 25 Cannon Run Drive, Newark, DE | 142,889.20 | 161,000.00 |
| Item 2A - 517 Centre Avenue, Roanoke, VA | 26,200.00 | 28,400.00 |
| Item 3A - 515 Centre Avenue, Roanoke, VA | 5,200.00 | 5,900.00 |
| Item 4A - Centre Avenue NW, Roanoke, VA | 2,600.00 | 2,900.00 |
| Item 5A - 11.17 acres, Roanoke, VA | 57,500.00 | 60,300.00 |
| Item 7C - 2630 Marsh Road, Wilmington, DE | 79,500.00 | 159,000.00 |
| | ----------------- | ----------------- |
| Total of these items | 313,889.20 | 417,500.00 |
| | | 313,889.20 |
| | | ----------------- |
| Increase to schedule | | 103,610.80 |
| | | ================ |

Item 1A has been adjusted to its fair market value as of the valuation date based upon a sale of the property in an arm's-length transaction within a reasonable time of the valuation date. Section 20.2031-1(b) of the Federal Estate Tax Regulations.

Items 2A through 5A are increased to fair market value on the valuation date. Returned value based on the assessed values and values are increased per inspection of of county real estate tax bills.

Item 7C is increased because estate only included a 50% interest; and at date of death, decedent held a 100% interest. Inspection of Deed verifies decedent and predeceased divorced spouse held the property as joint tenants with right of survivorship. Fair market value is the appraised value as of date of death.

---

| Form 886-A<br>(Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|

| NAME OF TAXPAYER | |
|---|---|
| Estate of Walter S. Bandurski | YEAR/PERIOD ENDED<br>8/26/1998 |

| | Returned | Corrected |
|---|---|---|
| **Sch. F, Other Miscellaneous Property** | | |
| Item 9 - Class Action Recovery | 0.00 | 318,773.00 |
| | ------------------ | ------------------ |
| Total of these items | 0.00 | 318,773.00 |
| | | 0.00 |
| | | ------------------ |
| Increase to schedule | | 318,773.00 |
| | | ================= |

Item 9 is the proceeds received from a class action claim that was
not included on the 706.  Decedent was a member of a class action
claim filed against Delaware Solid Waste Authority on May 21, 1998.
The claim resulted in a settlement of the class action January 2000.
The sum of $900,000 was distributed to Walter S. Bandurski, Inc.  The
amount paid in respect of the decedent was $363,600.

May 21, 1998, a class action complaint was filed by Sylvester
Jenifer T/A Vernon's Home Improvements, on behalf of itself and all
other similarly situated against Delaware Solid Waste Authority
seeking declaratory and monetary relief to redress the harm resulting
from enforcement of an unambiguously protectionist and facially
unconstitutional regulation promulgated by the Delaware Solid Waste
Authority that prohibits out-of-State disposal of solid waste
generated within the State of Delaware at solid waste facilities, not
operated by, on behalf of, or under contract with DSWA.  The action
brought for injunctive relief and to recover damages for injuries
suffered due to the deprivation of plaintiff's rights, privileges or
immunities as secured by the United States Constitution.  Complaint
in Pragraph 10 states the plaintiff brings this action on its own
behalf and on behalf of all members of a Class consisting of all
persons in the State of Delaware who delivered and transported solid
waste generated within the State for disposal at solid waste facilities
operated by, on behalf of, or under contract with DSWA and paid
tipping fees to DSWA during the period May 21, 1995 until the
restrictions imposed by DSWA are abrogated.  Complaint states
plaintiff does not know the exact size of the Class since such
information is in the hands of the defendant.

Complaint states tipping fees at DSWA were recently reported to be
around $58.50/ton and that out-of-state facilities had the capacity
to accept for disposal solid waste generated within Delaware for
tipping fees considerably lower than those charged by DSWA
Facilities.  Complaint states there is no valid State health, safety
or welfare purpose for DSWA Regulation that prohibits out-of-State
disposal of solid waste generated within the State at out-of-State
non-DSWA Facilities.  Complaint states DSWA has intentionally and
unconstituionally interfered with interstate commerce by eliminating
competition in the solid waste disposal market.

Attorney David Staats, who filed the class action complaint, states
in his October 17, 2000, letter that "Walter S. Bandurski, Inc., was
not a named plaintiff in the Complaint filed May 22, 1998, but was a
member of the class."  Mr. Statts further states in his letter that
he did not speak with any representative of Walter S. Bandurski, Inc.,
until after the first complaint was filed.  Mr. Staats in his October

| Form 886-A<br>Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

## Cont. F, Other Miscellaneous Property (Continued)

17, 2000, letter states that a "retainer agreement was signed by a represenative of Walter S. Bandurski, Inc. on September 28, 1998." October 2, 1998, Walter S. Bandurski, Inc., joined the second class action.  The Federal Estate Tax was filed November 26, 1999.  Mr. Staats in his December 6, 2000, letter states that the "fair market value of an asset does not depend on whether the owner of the asset is aware that he owns it."

Representative's letter of December 13, 2000, states the claim was unknown to the decedent at the time of his death. The ownership of that inchoate claim was effectively distributed to the stockholders by Walter S. Bandurski, Inc. when Walter S. Bandurski, Inc. was liquidated and disssolved.  The claim was effectively included in the transfer to the decedent's revocable grantor trust upon the transfer of his distribution rights to that trust.

For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property.  Internal Revenue Code Sections 2031(a), 2033.  The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  Section 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d483, 485 (11th Cir. 1987_, affg. T.C. Memo. 1985-595.  The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property.  Estate of Watt v. Commissioner, supra at 486.  Valuation is to be based on facts reasonably known at the date of valuation.  Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation.  Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987).

Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.  As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate.  United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinon of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F.Supp. 944 (E.D. Pa.

In Estate of Jeanne M. Houston v. Commissioner, 44 T.C.M. 284 (1982), the Court found that the decedent's interest in a wrongful death action that was contingent upon future recovery by her deceased spouse's estate did not preclude inclusion of the wrongful death action in her gross estate.  Decedent's previously deceased spouse died in 1972 as a a result of being struck by an automobile while in Michigan.  Decedent died March 17,1974, and her executor on December

| Form 886-A<br>Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| AME OF TAXPAYER<br>    Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

**F, Other Miscellaneous Property (Continued)**

16, 1974, filed suit for her deceased spouse's wrongful death. Action was settled prior to trial and proceeds were distributed to deceased spouse's surviving children.  Estate did not include any amount in the estate tax return representing the value of the decedent's interest in the wrongful death claim arising out of husband's death.  The court noted that "her rights of action accrued at the time of her husband's death and continued in existence, through her estate, beyond her own death some 14 months later."

The decedent's cause of action accrued prior to his death; and under Section 2031, 2033 and Estate Tax Regs. section 20.2033-1, the gross estate shall include the date of death value of all property, whether real or personal, tangible or intangible, beneficially owned by the decedent.  This includes the date of death values of all existing claims and choses in action of the decedent that pass to the estate, notwithstanding that they may be contingent and/or uncertain as to amount.  Estate of Curry v. Commissioner, 74 T.C. 540 (1980). The decedent at the time of his death did have a claim against Delaware Solid Waste Authority which should have been reported on the decedent's Federal Estate Tax Return.  The Tax Court has said that ignorance of an asset at date of death does not determine that the asset is valueless or should not be included as an asset of the estate:

> Even if the executors were totally ignorant of the claim, we do not agree that it would for that reason be without value.  An estate may possess many assets, tangible and intangible, of which the deceased's representative or even the deceased himself may be unaware, and which may not become apparent until the lapse of a substantial period of time after death.  Such property is for that reason no less an asset of the estate, nor can it necessarily be said to be valueless at the date of death.  This is particularly true where, as here, the asset is one which by its nature is discoverable in the ordinary course of administration of the estate.  Estate of I. W.  Baldwin, 1959, P-H. T.C. Memo P59, 203.

In this case, the decedent's company was included in the class action before the Federal Estate Tax Return was filed and should have been disclosed on the Return.  "(I)gnorance of the value of an asset at the time of a decedent's death does not justify treating the asset as valueless, any more than ignorance of the existence of an asset, discovered after the date of death, justifies exclusion of the asset from the decedent's gross estate."  Simmons at 217.

The fact that the settlement of the lawsuit resulted in a payment of $900,000 to Walter S. Bandurski, Inc., is highly indicative of the fact that the claim had value at the time of decedent's death.

The cases hold that unsettled litigation is an asset of the estate and is to be included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount.

To determine the proper valuation, all the facts and circumstances surrounding the claim must be examined.  Since the value of the claim

| Form 886-A | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| Rev. April 1968) (CG) | | |

AME OF TAXPAYER

Estate of Walter S. Bandurski

YEAR/PERIOD ENDED
8/26/1998

. F, Other Miscellaneous Property (Continued)

was not fixed as of date of death, subsequent events may be used as evidence of value. Estate of Curry v. Commissioner, supra. The court in the Houston case found the fair market value of the claim was $75,000. The claim was settled for $132,500 with net proceeds of $48,133.31. The court stated "(W)hile it may seem anomalous that the amount to be included in the gross estate exceeds the actual net recovery from the wrongul death action, the latter is not controlling in the determination of date of death value." Id. at 288.

In Estate of Davis v. Commissioner, 65 T.C.M. 2365 (1993), the Tax Court addressed the issue of how to value a cause of action which remained unsettled at the decedent's death. In Davis, the decedent initiated a lawsuit against Merrill Lynch for churning her account. The Court stated that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation. The court began with the amount of the claim as if there were no contest and then discounted the claim for 1) costs of litigation, 2) hazards of litigation, and 3) time delay in receiving the funds. The court used only a limited discount for the hazards of litigation because of the relative ease of proving the churning would result only in negligible risks or hazards of success in litigating.

The subject case is similar for the facts show that Delaware Solid Waste Authority was guilty of charging exorbitant and uncompetitive tipping fees and restricted the free flow of commerce amongst the States. Further evidence of the fact that the plaintiffs had a good case is the fact that the case was settled prior to trial with a payment of $900,000 to Walter S. Bandurski, Inc. Costs of litigation are included in the settlement. The only reduction that should be made to the settlement proceeds is the time delay in receiving the funds.

The representative of the estate is relying primarily on a line of cases that conclude that postdeath events may not be used in evaluating claims or deductions against an estate, Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Ballantine v. Tomlinson, 293 F.2d 311 (5th Cir., 1961); Propstra v. United States 680 F.2d 1248 (9th Cir., 1982); and Estate of Evelyn M. McMorris v. Commissioner, 243 F.3d 1254 (10th Cir., 2001). Section 2053 simply provides that such claims are deductible in determining the taxable estate if they are legally enforceable, i.e., are as allowable by the laws of the jurisdiction, whether within or without the United States, in which the estate is being administered. Treasury regulation section 20.2053-4 states the amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. The Court of Appeals has acknowledged that the "law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims." Propstra v. United States, supra at 1253. The court held that section 2053 precludes the consideration of post-death events in computing the value of certain and enforceable claims against an estate. This line of cases is not applicable when valuing assets of the estate.

| Form 886-A | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| Rev. April 1968) (CG) | | |
| NAME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

## F, Other Miscellaneous Property (Continued)

Unsettled litigation which is an asset of the estate is included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount.  See IRC sections 2032 and 2033.  In contrast see Reg. Section 20.2053-1(b)(3) which disallows a deduction from the estate that is taken upon the basis of a vague or uncertain estimate.  The date-of-death valuation rule applies to a deduction for a claim against the estate under IRC section 2053-1(a)(3).  As a result, events which occur after the decedent's death may not be considered in valuing that deduction.  The cases hold that in valuing assets of a decedent, subsequent events can be used to determine fair market value particularly when valuing the fair market value of a pending lawsuit as of date of death.

Estate is relying on Welch v. Commisisoner, 6th Cir. No. 98-2007, March 2, 2000, in which the court held that potential built-in capital gains tax liability should be considered in valuing an asset. This tax in reality may never be paid; therefore, it is an estimate and not a certain event.  The estate also relied on First National Bank of Kenosha v. United States, 763 R.2d 891 (7th Cir., 1985) in which the court allowed evidence of actual sales prices received 21 months after the date of death so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property.  Settlement of the subject claim within 20 months of the filing of the lawsuit is certainly a reasonable length of time.  There were no intervening events that drastically changed the value of the asset.  The lawsuit is not a subsequent event but was ongoing at date of death.  It was not beyond the contemplation of the parties on the relevant valuation date.

Estate is also relying on Estate of Mary B. Bull v. Commissioner, T.C. Memo 2001-92 (April 13, 2001).  The Bull case can be distinguished based on the fact that at date of death the estate had no right to insurance reimbursement and no obligation to pay to complete the decedent's residence which was destroyed by fire and was being retored at the time of her death. The court stated that the situation is unlike the situation "where a contingent legal fee was includable in an estate based on the rationale that it had been earned and a claim existed at the time of death."  In the subject case, the claim existed at date of death and is includible in the decedent's estate at its fair market value.

The estate has not presented any evidence as to the fair market value of the class action claim as of date of death of the decedent.  The class action claim is included at the present value based on a 6.800% rate which is the applicable federal rate for August 1998, see Revenue Ruling 98-36.  The present value for proceeds of $363,600 received 17 months after date of death is $318,773.

| Form **886-A**<br>Rev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|

| AME OF TAXPAYER<br>  Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |
|---|---|---|

| | Returned | Corrected |
|---|---|---|
| **ch. G, Transfers During Life** | | |
| Item 1 - 37814 shares Waste Management | 1,849,482.74 | 1,936,785.80 |
| | --------------- | --------------- |
| Total of these items | 1,849,482.74 | 1,936,785.80 |
| | | 1,849,482.74 |
| | | --------------- |
| Increase to schedule | | 87,303.06 |
| | | =============== |

Item 1.   Item is adjusted to the mean between the highest
and lowest quoted selling prices on the valuation date.   Section
20.2031-2 of the Federal Estate Tax Regulations.

| | Returned | Corrected |
|---|---|---|
| **ch. J, Funeral & Administration Ex.** | | |
| B.2 - Attorney fees | 30,000.00 | 64,614.00 |
| B.3 - Accountant fees | 12,500.00 | 18,000.00 |
| B.10 - Furniture Moving Expenses | 0.00 | 1,864.93 |
| B.11 - Interest on the Deficiency | 0.00 | 30,642.22 |
| B.12 - Environmental Valuation | 0.00 | 6,216.16 |
| | --------------- | --------------- |
| Total of these items | 42,500.00 | 121,337.31 |
| | | 42,500.00 |
| | | --------------- |
| ~crease to schedule | | 78,837.31 |
| | | =============== |

Deductions for expenses incurred in the administration of the
decedent's estate have been adjusted to reflect the amounts allowable
under Code section 2053.

An adjustment has been provided to allow a deduction for Federal
interest computed to be due and owing on the Estate tax
deficiency, pursuant to the provisions of Revenue Ruling 79-252,
1979-2 C.B. 333.

This deduction is only allowable in AGREED issue cases.
Refer to the detailed interrelated computation (attached as an Exhibit).

---

| epartment of the Treasury - Internal Revenue Service | Form  886-A (Rev. 4-68) (CG)<br>Page        *9* |
|---|---|

| Form **886-A**<br>Rev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| AME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

| Sch. K, Debts of Decedent | Returned | Corrected |
|---|---|---|
| Item 31 - CoreStates Bank | 25,126.43 | 24,770.15 |
| Item 33 - Mortgage on 207 Taft Avenue | 0.00 | 36,743.33 |
| Item 34 - WSB Corp. Income Taxes | 0.00 | 16,800.00 |
| | ---------------- | ---------------- |
| Total of these items | 25,126.43 | 78,313.48 |
| | | 25,126.43 |
| | | ---------------- |
| Increase to schedule | | 53,187.05 |
| | | ================ |

   Deductions for claims against the decedent's estate, the decedent's
unpaid debts, mortgages and/or liens have been adjusted to reflect
amounts allowable under Code section 2053.

| Sch. Q, Tax on Prior Transfer Credit | Returned | Corrected |
|---|---|---|
| | 0.00 | 28,452.19 |
| | | 0.00 |
| | | ---------------- |
| Increase to schedule | | 28,452.19 |
| | | ================ |

**redit for Tax on Prior Transfers -- Worksheet**
redit for tax on Prior Transfers - Summary
r nsferor A: Barbara A. Bandurski          DD:  8/ 7/1998
  sferor B:                                 DD:
ransferor C:                                DD:

| | A | B | C |
|---|---|---|---|
| . Transferee's tax | 35,139.00 | 0.00 | 0.00 |
| . Transferor's tax | 28,452.19 | 0.00 | 0.00 |
| . Max before Percent | 28,452.19 | 0.00 | 0.00 |
| . Percentage Allowed | 100% | 0% | 0% |
| . Credit Allowable | 28,452.19 | 0.00 | 0.00 |

| . TOTAL CREDIT ALLOWABLE | | 28,452.19 |
|---|---|---|

| Form 886-A | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| Rev. April 1968) (CG) | | |
| AME OF TAXPAYER | | YEAR/PERIOD ENDED |
| Estate of Walter S. Bandurski | | 8/26/1998 |

## . Q, Tax on Prior Transfer Credit (Continued)

### ART I, TRANSFEROR'S TAX ON PRIOR TRANSFERS

| | A | B | C |
|---|---|---|---|
| .. Gross value - transfer | 79,500.00 | 0.00 | 0.00 |
| :. Death taxes payable | 0.00 | 0.00 | 0.00 |
| :. Encumbrances allocable | 0.00 | 0.00 | 0.00 |
| :. Obligations allocable | 0.00 | 0.00 | 0.00 |
| :. MD applicable | 0.00 | 0.00 | 0.00 |
| :. Total Reductions | 0.00 | 0.00 | 0.00 |
| '. Net Value of Transfer | 79,500.00 | 0.00 | 0.00 |
| :. Net Value of All Transfers | | | 79,500.00 |
| | | | |
| '. Transferor's taxable est | 2,126,166.49 | 0.00 | 0.00 |
| .0. Federal estate tax paid | 531,678.26 | 0.00 | 0.00 |
| .1. State death tax paid | 108,893.32 | 0.00 | 0.00 |
| .2. Foreign death tax paid | 0.00 | 0.00 | 0.00 |
| .3. Other death tax paid | 0.00 | 0.00 | 0.00 |
| .4. Total Reductions | 640,571.58 | 0.00 | 0.00 |
| .5. Value, transferor's est | 1,485,594.91 | 0.00 | 0.00 |
| | | | |
| .6. Net federal estate tax | 531,678.26 | 0.00 | 0.00 |
| .7. Credit, gift tax paid | 0.00 | 0.00 | 0.00 |
| .8. Transferor's TPT credit | 0.00 | 0.00 | 0.00 |
| .9. Tax on transferor's est | 531,678.26 | 0.00 | 0.00 |
| .0. Transferor tax-transfer | 28,452.19 | 0.00 | 0.00 |

### ART II, TRANSFEREE'S TAX ON PRIOR TRANSFERS

| | | |
|---|---|---|
| . Tax before TPT Credit | | 868,140.20 |
| 2. Transferee's Gross Estate | | 3,390,185.57 |
| 3. Net Value of All Transfers | | 79,500.00 |
| 4. Transferee's reduced gross estate | | 3,310,685.57 |
| 5. Total debts & deductions (before MD & CD) | 477,538.07 | |
| 6. Marital Deduction | 0.00 | |
| 7. Charitable Bequests | 0.00 | |
| 8. Charitable Deduction Proportion | 0.00 | |
| 9. Reduced Charitable Deduction | 0.00 | |
| 0. Transferee's deductions as adjusted | | 477,538.07 |
| 1. (a) Transferee's reduced taxable estate | | 2,833,147.50 |
| (b) Adjusted taxable gifts | | 0.00 |
| (c) Total reduced taxable estate | | 2,833,147.50 |
| 2. Tentative tax on reduced taxable estate | | 1,202,368.18 |
| 3. (a) post 1976 gift taxes paid | 0.00 | |
| (b) unified credit | 202,050.00 | |
| (c) section 2011 State death tax credit | 167,316.98 | |
| (d) section 2012 gift tax credit | 0.00 | |
| (e) section 2014 foreign death tax credit | 0.00 | |
| (f) Total credits | | 369,366.98 |
| 4. Net Tax on Reduced Taxable Estate | | 833,001.20 |
| 5. Transferee's Tax on Prior Transfers | | 35,139.00 |

Estate of: wb,  DD:  8 26 1998
File Name: C:\Program Files\EST3\wb.ET3
Inter-Est Version 3.00, Release 78, (Standard Output) (#1373)
Date and time of run: Friday, May 10, 2002, 01:50 PM

## MAIN PRINTOUT SECTION

| | | |
|---|---:|---:|
| Gross Estate | | 3,390,185.57 |
| Sch. JK&L (before interrelated) | 446,895.85 | |
| Int, Federal | 30,642.22 | |
| Debts & Expenses | 477,538.07 | |
| Marital Deduction | 0.00 | |
| Charitable Deduction | 0.00 | |
| Total Deductions | | 477,538.07 |
| Taxable Estate | | 2,912,647.50 |
| Adjusted Taxable Gifts | | 0.00 |
| Total Amount Drawing Tax | | 2,912,647.50 |
| Tentative Tax | | 1,244,503.18 |
| Aggregate Gift Tax Payable | | 0.00 |
| Tax before Unified Credit | | 1,244,503.18 |
| Unified Credit from Table | 202,050.00 | |
| Adjustment to Unified Credit | 0.00 | |
| Net Unified Credit | | 202,050.00 |
| Tax before SDTC | | 1,042,453.18 |
| State Death Tax Credit | | 174,312.98 |
| Net Tax after State Death Tax Credit | | 868,140.20 |
| Gift Tax Credit | 0.00 | |
| Foreign Death Tax Credit (Statutory) | 0.00 | |
| Prior Transfer Credit | 28,452.19 | |
| Foreign Death Tax Credit (Treaty) | 0.00 | |
| Total Credits | | 28,452.19 |
| Estate Tax | | 839,688.01 |
| Generation Skipping Transfer Tax | | 0.00 |
| Total Federal Tax | | 839,688.01 |

## CREDIT FOR TAX ON PRIOR TRANSFERS - FORM 3229

| | | |
|---|---:|---:|
| Line 21, Tax before TPT | 868,140.20 | |
| Line 22, Total Gross Estate | 3,390,185.57 | |
| Line 23, Net Value, All Transfers | 79,500.00 | |
| Line 24, Reduced Gross Estate | 3,310,685.57 | |
| Line 25, Debts & Deductions | 477,538.07 | |
| Line 27, M.D. for 2nd Limitation | 0.00 | |
| Line 28, Charitable Deduction | 0.00 | |
| Line 29, C.D. Proportion | 0.00 | |
| Line 30, C.D. for 2nd Limitation | 0.00 | |
| Line 31, Deductions as Adjusted | 477,538.07 | |
| Line 32(a), Taxable for 2nd Limitation | | 2,833,147.50 |
| Line 32(b), Adj. Taxable Gifts | | 0.00 |
| Line 32(c), Total Reduced Taxable Estate | | 2,833,147.50 |
| Line 33(a), Tentative Tax | | 1,202,368.18 |
| Line 33(a)(i), Post 1976 G.T. Paid | 0.00 | |
| Line 33(a)(ii), Unified Credit | 202,050.00 | |
| Line 33(a)(iii), S.D.T. Credit | 167,316.98 | |
| Line 33(a)(iv), Gift Tax Credit | 0.00 | |
| Line 33(a)(v), F.D. Tax Credit | 0.00 | |
| Line 33(b), Tax on Red. Tax. Estate | | 833,001.20 |
| Line 40, Second Limitation | | 35,139.00 |

Name of Transferor: bb
Line 7, Net Transfer                        79,500.00
Line 20, First Limitation                   28,452.19
Line 35, Second Limitation                  35,139.00
Line 37, Controling Limitation              28,452.19
Line 38, Percent Allowable              100.0000000 %
Line 39, Credit Allowable                   28,452.19

## FEDERAL INTEREST OPTION SELECTED

Interest Table File: C:\Program Files\EST3\Federal.IT4
Interest Table Description: Federal (RProc 95-17)(12/01)
Special Interest Rate Used (old):    4.0000000 %
Special Interest Rate Used (new):    2.0000000 %
INTEREST FACTORS USED

|          | Regular (100%) | Special (old) | Refund |
|----------|----------------|---------------|--------------|
| Pd # 1  c | 5.6297592 % | 2.7764934 % | 5.6297592 % |
| Pd # 2  c | 20.0771407 % | 9.7631710 % | 20.0771407 % |

PART 1

|          | Date | Tax Pmt. | Int. Pmt. | |
|----------|------|----------|-----------|---|
| Due Date | 5 26 1999 | 849,400.00 | 0.00 | P |
| Pd # 1 | 1 31 2000 | <154,166.41> | <8,714.79> | |
| Pd # 2 | 5 31 2002 | -------------- | -------------- | |

P = Period entry for Interest on Penalty Computation

PART 2

|          | Starting Balance | Tax Paid | Interest Balance | Applied To Balance |
|----------|------------------|----------|------------------|--------------------|
| Due Date | 839,688.01 | 849,400.00 | 0.00 | 849,400.00 |
| Pd # 1 | <9,711.99> | <154,166.41> | 8,168.03 | <154,166.41> |
| Pd # 2 | 144,454.42 | 0.00 | 38,810.25 | 0.00 |

PART 3

|          | Interest Drawing Int. | Total Amount Drawing Int. | Interest Factor | Interest |
|----------|-----------------------|---------------------------|-----------------|----------|
| Pd # 1 | 0.00 | <9,711.99> | 5.6297592 % | 0.00 |
| Pd # 2 | 8,168.03 | 152,622.45 | 20.0771407 % | 30,642.22 |
| Total Interest Deduction | | | | 30,642.22 |

LAST LINE OF PRINTOUT